Good morning, your honors, and may it please the court. I'm pleased to be here today representing Duane Worthington in the matter this morning. And this is a very interesting case, I think. In fact, if I were a law school professor, I'm definitely going to save this for the future should that ever happen for a law school exam. We have retroactive guidelines, SCOTUS issues, we have a 2255, we have guideline selections issue, and we certainly have calculation issues. And the simple answer to this law school exam question is that both the court and the government simply have the guideline calculation wrong. It is simply impossible to reach the guideline calculation that the district court applied in this case, which was a grand total of 352 to 425 months. The district court, of course, relied on a career offender guideline calculation to reach that. And using that career offender guideline calculation, the court used a life maximum. This case no longer has a life maximum. Mr. Worthington was charged in 1996, long before the United States Supreme Court decided Booker, when the guidelines were still mandatory. He had burgled, or excuse me, he had robbed a for some travelers checks. Mr. Worthington had three prior convictions for a Washington robbery offense, and therefore he was charged with a 3559 C, three strikes offense. On the morning that the case was scheduled for trial, the parties of course reached a plea agreement. They decided that they would agree to a total sentence of 425 months, the government would waive that 3559 C, and the case proceeded forward that way. Now of course, because the case was pre-Booker, in order to adopt an 11E1C, as it was at the time, stipulated sentencing agreement, the court had to find that that fell within the guideline calculation, or that it departed from the guideline calculation for a permissible reason, because of course variances weren't allowed in those days. The court made that finding, and in fact, the guideline that was applied at the original sentencing hearing back in 1997, was the career offender guideline, using the Hobbs Act robbery as the instant crime of violence, and the Washington robberies, excuse me, as the previous offenses. The life maximum that called for the 37 base offense level under the career offender sentencing guideline, of course, was triggered in this case, and this is perhaps the most interesting thing about this case. It was triggered not by the Armed Career Criminal Act, which was eventually set aside in 2016. He moved for relief in 2015, of course, after Johnson. But everyone proceeded in this case, after Mr. Worthington was granted Johnson relief, as if there was still a life maximum at play in this case. And I think that the mistake that everybody made was, of course, to consider the 924C offense, which today carries a five-year mandatory consecutive. But at the time of Mr. Worthington's conviction, it was long before the statute was modified in 2002. This was back in 1996, of course, that Mr. Worthington was charged, and that version of 924C does not have a maximum penalty of life. It has a maximum and minimum penalty of five years incarceration. Ms. Jensen, go ahead. Yes. To skip a little ahead to the future process in this case, what's the effect of the limited grant of certificate of appealability by the administrative panel of this court that sent it back for re-sentencing? It limited the relief that was granted. Certainly, Your Honor. I think that the effect of the limited grant in this case was simply to rule that Mr. Worthington could not pursue a 2255 claim for relief on the basis of his sentencing as a career offender, which, of course, the Supreme Court held in 2016 was not subject to attack for the same reasons as Johnson. And he also could not make a 924C challenge. The law at the time that the court made this grant was pretty well settled, of course, at that time that Johnson applied to ACCA. It didn't expand to these other things. Now, of course, we had DeMaia. Subsequently, we had Davis that eventually did get to 924C. But at the time that this court granted Mr. Worthington's petition for a second or successive 2255 petition, it was simply deciding whether there was a fair basis for him to bring his claim, his claim specifically under the ACCA, to the district court. That's all this court decided. You can go forward on your ACCA claim. You cannot go forward with a 2255 specifically targeting your career offender or your 924C. Well... Counsel, the word claim, I don't believe, was in the language used by the prior panel. Would we have to read that into the language that they used in their authorization? I don't believe that it's even necessary for you to look at that language in the authorization. And I don't think that the word claim is even necessary either, Your Honor. And that's because the court's job in deciding whether to allow a party to go forward with a second or successive petition is simply to make that basic finding under 2255H2. Is there a sufficient basis for the court to go forward or for the court to allow the defendant to make that second or successive challenge to what would otherwise be a final conviction? Of course, the Supreme Court said in 2015 that Mr. Worthington could challenge his Johnson conviction and this court agreed with that. Now, if we kind of back up and we say, let's say Mr. Johnson had only asked this court to pursue a Johnson claim under 2255. Well, we wouldn't even be talking about whether he could or could not be resentenced, whether Tidwell would require that the resentencing be done de novo using an accurate guideline calculation. But because he asked for that relief or asked for permission to pursue that claim and was denied, I don't see how the government or the district court found that that somehow translates into a holding of this court that subsequently binds the district court to forever doom Mr. Worthington to be a career offender despite any subsequent changes in the law. In fact, in Kemp, a court that this decided some time ago, it was a very similar situation. The court was presented with a 2255 post-Johnson and the lower court miscalculated the guidelines. Is there any effect at all to the waiver signed in conjunction with the original plea? I don't believe there is, Your Honor, and this issue was fully litigated before the Mr. Worthington from pursuing his claim. The court found that that was not the basis. And in fact, the Eighth Circuit has held in Richeson that an 11E1C, now 11C1C agreement, is not binding after Johnson relief. It certainly is a factor that the court can and should consider. I don't disagree, of course, that the government gave up its three strikes petition in this case, but that doesn't mean that Mr. Worthington didn't give up anything. The parties couldn't have foreseen in 1997 that nearly 20 years later the Supreme Court was going to knock out that ACCA. And in fact, in granting 2255 relief, both Judge Woolley and the sentencing judge, Judge Jarvie, in this case, specifically said once the ACCA is set aside, the entire sentencing package has to be re-evaluated. And that, of course, is because with the ACCA, it changed the entire calculation. But without the ACCA, we don't have a life sentence. And in fact, if we apply a present-day guideline calculation applying the authority of Tidwell, that because Mr. Worthington has been granted 2255 relief, because his 2255 sentencing package, the entire thing, the sentencing package, was undone, the law is so clear in both Tidwell and Binkholder that we do a de novo resentencing. And a de novo resentencing, of course, requires the guidelines be correctly calculated. There is no way to get to the guideline calculation the Court received. Even if, Your Honors, we were to accept this notion that Mr. Worthington must always be considered a career offender simply because you didn't allow him to go forward with the claim that the Supreme Court later said, or may have already said, was foreclosed in the Beckles case, his maximum guideline range as a career offender is 228 to 270 months. That's as a career offender. Now let me just comment. Mr. Worthington has already served 307 months in prison. So he's three years above the top of the present day guideline. And that's if we treat him as a career offender. We don't even have to get to the Washington convictions. We don't have to consider whether Hobbs robbery is a qualifying predicate. You don't need to go there. Because even if he's a career offender, his starting base offense level is 32. It's not 37. It's 32 because the maximum statutory penalty in the case is the Hobbs Act robbery. And that, of course, is a 20 year penalty. How on earth we can have offense level 37 even as a career offender? Nobody has ever explained to me the pre-sentence, right? Or everybody just falls back on this Court's, no, you can't go forward with a 2255 claim in regard to your career offender. But the Court didn't even look at whether Mr. Worthington was a career offender. What's your best authority for this panel having the ability to, in essence, ignore or distinguish the limitation of the Certificate of Appeal ability? Well, I think it's simply not binding, Your Honor. This isn't a case, that wasn't the issue that the panel... And what's your best authority that that limiting language is not binding on us? Well, my best authority, Your Honor, I can't point to a specific case right off of the There's a number of cases and well-established precedent that says only issues that are actually litigated and argued by the courts are law of the case and bind the parties moving forward. We didn't litigate anything when asking the Court in an SOS petition to allow the case to go forward. The parties didn't fight about anything except for whether he had, based on retroactively applicable Supreme Court authority, whether Mr. Worthington could go forward and ask the District Court for 2255 relief. The Court said, yes, you can do that, and he did. He was successful. He had his entire sentencing package and ACCA convictions set aside, and we go forward with the resentencing. So regardless, Your Honor, I think of how you look at that, that issue simply wasn't litigated. It wasn't before the Court. And like I said, well, I can't point to a specific case. I'm confident it's out there, and I'd be happy to file a 28J letter on that point if you would like me to. I'd appreciate it. Thank you. I would reserve the rest of my time for rebuttal, Your Honors. Thank you, Ms. Jansen. May it please the Court, Ms. Jansen. I'm Cliff Cronk, and I'm the prosecutor who handled this case back in 1996. I sat across the table from Mr. Worthington when he asked for anything that would help him avoid a mandatory life sentence. The evidence against him was overwhelming. Ms. Jansen got it wrong. He didn't have three prior robbery convictions. He had eight. Three were cited in the indictment, and he was facing a life sentence for the armed crew criminal at the time, but he was also facing a life sentence under 3559C because he was the poster child for a mandatory life sentence under the three strikes law. Mr. Worthington came to Iowa with eight prior robbery convictions in the state of Washington. Some with pistols, one with dynamite, and he had actually recently been paroled on his last robbery when he robbed a McDonald's in June of 1996, threatening to kill one of the workers there to get gift certificates and cash. That was in June. In August, he came to Iowa, but before he came to Iowa, he went to Indianapolis, Indiana with a massive pistol, and he robbed a triple-A travel agency there, took traveler's checks, and also robbed one of the people personally who was at the travel agency. The reason we know that is because shortly after he left there, he came to Iowa with a plan to do the exact same type of robbery of a small travel agency in a small Iowa town, Bettendorf, Iowa, and he used that same pistol and the same disguise that he had used in Washington at the McDonald's and the same disguise that he used at the triple-A travel agency in Indianapolis. When he was caught with the gun, with the traveler's checks from Indianapolis, with the traveler's checks from Bettendorf, his fingerprints found on items that he handled, carjacking a cab, when he got caught, he faced three mandatory life sentences had he been already filed or were filing charges in which he would face mandatory life in the state of Washington for his robberies. So now we're at 11 robberies when he is sitting there after having lost his suppression hearing and facing mandatory life. Nobody during that plea discussion talked about him being an impossibility of life under the Armed Career Criminal Act. He was facing mandatory life plus more time for 924C. So this is the backdrop of why we're here. Unfortunately, I relented with Mr. Worthington and I agreed to a 425-month sentence. That was the number I came up with. That was the number I came up with. If you read this, you'll see that he and his lawyer, a very fine attorney, told the judge this is what we want to do. We want to waive our right to challenge the adverse ruling on the motion to suppress. We want to waive our 2255 rights. We want to... Are you still contending here at this juncture that that waiver at that time was effective? I do. But it appears that words don't matter and agreements don't mean anything. Even so far as the Court of Appeals' words that you may not challenge your career offender guideline. Counsel, is the enforceability of the plea agreement properly before this Court in the absence of a cross-appeal on that issue? That's a good question. We talked about a cross-appeal on this issue. And we decided that the 420-month sentence was adequate, even though it's not what we had agreed on. We felt it was adequate. And so, if I was procedurally in error for not appealing that, we couldn't appeal Judge Woolley's ruling. We felt that we didn't have a final order until Judge Jarvie ruled. And we just decided not to cross-appeal on that issue because we thought the 420-month sentence was substantively reasonable. And we didn't feel that there was any rightful challenge to that sentence. So, we're here to ask the Court to uphold that 420-month sentence. I find it a little strange that Mr. Worthington's attorneys want to claim that the guidelines that applied in this case should be applied differently, because I really don't see this as being a guideline sentence at all. Obviously, it's true that back when this plea agreement was reached, the guidelines were mandatory. But this plea agreement specifically said, and we're not applying the guidelines here. We're reaching a fair result based on the situation that Mr. Worthington was in. But what's resentencing's been ordered, as was done here? Yes. Under what guidelines or what considerations is resentencing to be conducted? That's a difficult question to answer. As cited by Ms. Jansen, the 924C guidelines have changed. And it appears that they want the 2018 career offender guideline to apply. If it does apply in 2018, it's impossible to get up. Well, they've put out a new number today, but the maximum for a career offender who has a 924C conviction with multiple counts faces a maximum of 365 months under the 2018 guidelines. If your honors remand or give Mr. Worthington another opportunity at sentencing, then whatever guidelines apply on that day arguably would apply. And we don't know what those are going to be. I suppose aren't the cases tending toward it being the guidelines in effect at the time of the new sentencing? That is, I think, exactly right, except then when you have these issues with ex post facto changes in the guidelines. And then sometimes you go back to the original sentence at the time. So there wouldn't be a factor here since the new guidelines are actually beneficial to the defendant? I disagree. I think, well, they might be slightly beneficial. But like I said, under the 924C guideline, the maximum is 365 months, which is substantially higher than what Mr. Worthington is arguing apply in this case. And we argue that even if the 2018 guidelines apply and the guideline range tops out at 365 months, Judge Jarvie didn't impose a guideline sentence. He imposed a sentence that was sufficient but not greater than necessary considering that Mr. Worthington had already said 425 months was fair. So what's our review standard then of that sentencing process? It's in my brief, but I believe it's de novo with respect to the law. And obviously the substantive reasonableness of the sentences reviewed, I think that's for an abuse of discretion. Counsel, could you address whether and why the language of the 2016 authorization from the prior panel of this Court should be the law of the case? Well, I think it should be the law of the case because it was a statement by this Court telling us what we can and cannot do. Counsel, Mr. Worthington says it wasn't really litigated and decided, and so how could it be the law of the case? I don't want to defend that 2016 response to the request for a certificate of appealability. I think it should have been denied, and I think it should have been denied because of the binding plea agreement. I think it should have been denied because the plea agreement says it wasn't based on the guidelines and it wasn't based on the Armed Career Criminal Act. So when the Court of Appeals reviewed it for those problems, it clearly determined that under Johnson, if his sentence was based on the Armed Career Criminal Act, that's as far as he gets to go because under 2255 he shouldn't be able to attack any other aspect of his case. And so I think it's logical to believe, and I think the District Court logically concluded, that we're not going to go back and re-litigate everything having to do with Mr. Worthington's challenges to his convictions. We're only going to be restricted to the Armed Career Criminal Act designation. How would you respond to their argument that, well, what if he had only sought relief under Johnson? Then we wouldn't even be here, and he would be entitled to a de novo resentencing? Well, I would have made the same argument that he's not entitled to relief at all, number one. I understand that maybe I'd be arguing the same thing in front of the District Court had the Court said he gets to challenge his armed career criminal designation. I would still be arguing that that doesn't change the ultimate sentence in the case because it doesn't matter whether or not he's an armed career criminal or not. I hope that was responsive. If there's no other questions, I'll yield the rest of my time. I don't see any. Thank you. Thank you, Mr. Cronin. Ms. Jansen, your rebuttal. Thank you, Your Honors. I don't like to resort to cliches, but as Mr. Cronk was speaking, the thing that came into my mind was the old one, if you have the law, argue the law. If you have the facts, argue the facts. If you have neither, bang on the table. Or in this case, simply point out what a bad guy Mr. Worthington is and how reasonable it was for Judge Jarvie to ultimately sentence him to 420 months. Unfortunately, that skips over all of the pesky law. It skips over all of the pesky facts of this case. Even accepting that Mr. Worthington had all of these prior convictions and was looking at three strikes three times over, Mr. Cronk did relent. They did reach a plea agreement. The 3559C, the other offenses, are not part of this case. Reminds me of the old saying, Mr. Cronk, if you will, be justified in saying no good deed goes unpunished. That is the truth sometimes, I'm afraid. We certainly saw in a ... I'm sorry, Your Honor. Worthington doesn't have much to commend himself, but as you point out, that's not the issue. That's exactly right, Your Honor. Mr. Cronk pointed out that words don't mean anything, i.e. that Mr. Worthington, he made this deal, gosh darn it, he avoided a life sentence, and therefore, we should just be perfectly fine with a 420 month sentence, but that is just simply not what the law says. Again, under your analysis, the maximum would be what? Your Honor, my position is that the maximum is the non-career offender guideline range, which I think is an issue that you can defer back to the district court to make those ultimate findings about whether career offender applies or not. That would be 130 to 147, but even if the government is correct that somehow he is still a career offender, or if I'm wrong about the Washington Robberies and Hobbs Act robbery, then his maximum guideline range is 228 to 270. Notably, the government has actually conceded, in my opinion, that remand is required. It says under the 2018 guidelines on a de novo resentencing, the maximum possible guideline range for Mr. Worthington is 365 months. That is not the guideline range the district court applied. The district court used 352 to 425 and imposed a sentence of 420, way above 365. The law is extremely well established in this circuit that that is a procedural sentencing error to go forward and make a sentencing decision with an inaccurate guideline calculation. And here Judge Jarvie said nothing about what sentence he would impose if the guideline calculation had been anything other than what it was back in 1997. We don't have to do this again. If you are writing our opinion, in other words, the case is remanded for the imposition of a sentence not to exceed what? Well, Your Honor, I think that the judge certainly has the authority to go above whatever the sentence is, but I would certainly ask this court to find that the correct guideline range is 130 to 147 months because Mr. Worthington is not a career offender. Well, do we have to even do that? Wouldn't we just send it back and let the district court calculate the guidelines? Yes, Your Honor. I believe that you do not have to reach those issues. There is a clear guideline error here, inescapable, unavoidable, and the district court didn't make any harmless error findings. Unless there are further questions, Your Honor, I thank you for your time. Thank you, Ms. Jansen. Thank you also, Mr. Kronk. I'll look forward to the parties supplementing the briefing in the case on the point of the effect of the denial of the COA as to the issues raised in this appeal. I'll do that promptly, Your Honor. Thank you. Thank you, Your Honor.